UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VIOREL ANGHELOIU,<br><br>           Plaintiff,<br><br>    v.<br><br>PEACEHEALTH,<br><br>           Defendant. | CASE NO. C17-5891 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION AND DENYING PLAINTIFF'S AMENDED MOTION FOR SANCTIONS, MOTION TO COMPEL DISCOVERY, AND MOTION TO CONTINUE |

This matter comes before the Court on Defendant PeaceHealth's ("PeaceHealth") motion to dismiss and compel arbitration (Dkt. 23) and Plaintiff Viorel Angheloiu's ("Angheloiu") amended motion for sanctions (Dkt. 28), motion to compel discovery (Dkt. 30), and motion to continue PeaceHealth's motion (Dkt. 31). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

## I. PROCEDURAL HISTORY

On October 30, 2017, Angheloiu filed a complaint against PeaceHealth asserting causes of action for wrongful termination in violation of public policy and a violation of

the Patient Safety and Quality Improvement Act ("PSQIA"). Dkt. 1. On February 8, 2018, Angheloiu filed an amended complaint adding a claim for declaratory relief that his two other claims are not subject to arbitration. Dkt. 22.

On February 21, 2018, PeaceHealth filed a motion to dismiss and compel arbitration. Dkt. 23. On March 23, 2018, Angheloiu filed a provisional response and motion to compel and a motion for sanctions and provisional response. Dkts. 23, 24. On March 29, 2018, Angheloiu filed an amended provisional response and amended motion for sanctions. Dkt. 28, 29. On April 2, 2018, Angheloiu filed a motion to stay PeaceHealth's motion. Dkt. 29. On April 4, 2018, Angheloiu filed a motion to compel and a motion to continue noting date for PeaceHealth's motion. Dkts. 30, 31. On April 5, 2018, the Court issued an order directing Angheloiu to stop filing redundant motions seeking the same relief and renoted all pending motions for consideration on the Court's April 20, 2018 calendar. Dkt. 32.[1] On April 17, 2018, PeaceHealth responded to Angheloiu's motions. Dkt. 36. On April 20, 2018, Angheloiu replied. Dkt. 38.

## II.   FACTUAL BACKGROUND

At the commencement of his employment, Angheloiu and PeaceHealth executed a Physician Employment Agreement ("Employment Agreement"). Dkt. 24 at 4–25. The agreement contains a dispute resolution section, which provides a procedure to follow when disputes arose relating to the Agreement. *Id*. § 8. The parties agreed to first meet and confer to resolve the dispute. *Id*. § 8.1. If the dispute was not resolved, the parties

---

[1] The Court denies as moot Angheloiu's motion to continue PeaceHealth's motion to dismiss.

agreed to engage in mediation. *Id*. If the parties could not resolve the dispute in mediation, then the parties agreed to arbitration. *Id*. § 8.2.

The parties also entered into a Recruitment Agreement. Dkt. 24 at 37–41. The agreement incorporates the Employment Agreement. *Id*. at 37. The Recruitment Agreement also contains a choice of law provision that provides that the state and federal courts of Washington shall have jurisdiction over the agreement. *Id*. § IV.D.

The parties dispute whether Angheloiu has sufficient time and/or ability to read and understand the provisions of these agreements. PeaceHealth contends that it sent the agreements to Angheloiu almost a week before he signed and returned them. Dkt. 24 at 1, ¶ 2. Angheloiu contends that "[d]uring the time that PeaceHealth gave me to consider the [agreements], I did not have time to consult with counsel or carefully consider the documents. I was experiencing significant relationship problems and had to travel to Ohio." Dkt. 25-2, ¶ 2.

Regarding the discovery motions, on December 22, 2017, Angheloiu sent requests for production ("RFPs") to PeaceHealth. Dkt. 30-2 at 4–33. Angheloiu sent 89 requests, some with multiple parts. *Id*. PeaceHealth responded, objecting to the majority of the requests and also producing some documents. Dkt. 36 at 4; Dkt. 28-2 at 143–199. On Friday March 2, 2018, Angheloiu sent PeaceHealth a notice of limited deposition requesting a 30(b)(6) deposition and listing 22 topics that he intended to explore. Dkt. 37 at 10–15. Angheloiu stated that the preferable time for the deposition was the following Monday March 5, 2018 starting at 9:00 AM. *Id*. at 10. PeaceHealth objected to the notice. After some discussions, the deposition occurred on March 21, 2018. Dkt. 28-2 at

1. In general, the parties dispute the scope of discovery at this point of the proceeding. Angheloiu seeks broad discovery while PeaceHealth contends that discovery should be limited to the issue presented in the motion to dismiss or compel arbitration.

## III. DISCUSSION

**A.     Discovery Motions**

As a threshold matter, PeaceHealth argues that the Court should deny Angheloiu's discovery motions because he failed to meet and confer. The Local Rules of Procedure require any motion to compel to include a certification that the movant has attempted in good faith to meet and confer with the opposing party to resolve the discovery issue without Court intervention. LCR 37(a)(1). "The certification must list the date, manner, and participants to the conference." *Id*. "If the movant fails to include such a certification, the court may deny the motion without addressing the merits of the dispute." *Id*.

In this case, Angheloiu's motion to compel includes a certification that the parties "conferred in good faith regarding the substance of the motion . . . ." Dkt. 30 at 1. Angheloiu, however, fails to list the date, manner, and participants to the conference. *Id*. Instead, the motion and the accompanying declaration simply refer to numerous email exchanges regarding Angheloiu's RFP's and deposition request. *Id*.; Dkt. 30-1 (declaration of counsel). In response, PeaceHealth asserts that, at most, the parties have only conferred regarding RFPs 20, 21, and 23. Dkt. 36 at 29–31. Based on these assertions, PeaceHealth argues that the Court should limit consideration to only these three RFPs. *Id*.

Angheloiu contends that PeaceHealth's response is based on "numerous clear misrepresentations of fact." Dkt. 38 at 2. For example, Angheloiu asserts that the parties did meet and confer because Angheloiu sent PeaceHealth a copy of his motion to compel nearly a month before he filed it and the parties discussed the motion on the record during the deposition. Dkt. 38 at 2. PeaceHealth, however, has submitted the email from Angheloiu's attorney, Eric Helmy, which prefaced the motion. Mr. Helmy sent the email late Friday night, threatening to file the motion the following Monday unless PeaceHealth granted Angheloiu an extension of time to respond to the motion to dismiss. Dkt. 37 at 50–51. Mr. Helmy closed the letter with the following: "Please contact me by **2:00 PM on Monday** with affirmation of a 2-week extension for our response to your motion, and then we can confer further about PeaceHealth's plans for compliance [with discovery]. If I haven't heard from you by then, I'll file our motions." *Id*. at 51. This evidences an intent not to meet and confer, and instead use discovery as a sword to delay consideration of PeaceHealth's motion. Such threats are unprofessional, and do not amount to a good faith effort to meet and confer.

Similarly, Angheloiu contends that "[c]ounsel for both parties conferred about the pending motions *on the record* in deposition." Dkt. 38 at 2. Angheloiu recounts the "conferral" as follows:

> When Defense counsel restricted her witness from testifying on grounds that Plaintiff had refuted, Plaintiff's counsel implored his colleague "please don't do this." Plaintiff's counsel then stated that given Defendant's obstructionism in the deposition and refusal to disclose documents, Plaintiff would have "no choice" but to file a motion for sanctions and the Motion to Compel of which he had sent a draft.

*Id.* This is not a good faith attempt to resolve discovery issues without the Court's involvement. Even if it could be considered an attempt to resolve "obstructionism in the deposition," there is absolutely no basis for contending that this discussion was a good faith attempt to resolve objections to Angheloiu's RFPs. Therefore, the Court denies the majority of Angheloiu's motion to compel and motion for discovery sanctions because Angheloiu failed to meet and confer in good faith.

Regarding the RFPs that PeaceHealth concedes the parties discussed, the Court also denies Angheloiu's motions. PeaceHealth concedes that the parties met and conferred regarding RFPs 20, 21, and 23. PeaceHealth, however, asserts that it has "produced all of the responsive documents in its possession, custody or control responsive to [these RFPs]." Dkt. 36 at 9. Thus, there is nothing to compel, and the Court denies Angheloiu's motion as to these RFPs as well. Having found no discovery violations, the Court also denies Angheloiu's motion for sanctions.

Similarly, the Court denies PeaceHealth's request for sanctions and/or attorney's fees.

**B.  Motion to Dismiss**

"A party seeking to compel arbitration has the burden under the [Federal Arbitration Act ("FAA")] to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern

the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Washington courts follow the objective manifestation theory of contracts, imputing an intention corresponding to the reasonable meaning of the words used." *GMAC v. Everett Chevrolet, Inc.*, 179 Wn.App. 126, 134–35 (2014).

In this case, PeaceHealth has met its burden to compel arbitration. There is no dispute regarding whether the agreement to arbitrate encompasses Angheloiu's claims. The parties, however, dispute whether a valid, written agreement to arbitrate exists. Angheloiu presents two arguments to the contrary. First, Angheloiu contends that the choice of law provision in the Recruitment Agreement either controls or creates an ambiguity with the arbitration provision in the Employment Agreement. Dkt. 28 at 15. Angheloiu's arguments are without merit. Even if the two agreements are read together as one complete agreement, Angheloiu has failed to show a conflict between the parties agreeing to jurisdiction in Washington and the parties agreeing to arbitration. For example, PeaceHealth accurately argues that any award in arbitration may require confirmation in a court of law. Thus, the arbitration provision compels the parties to participate in arbitration, and then, if any party wishes to seek confirmation or contest the arbitrator's decision, the choice of law provision requires that the matter be filed in a Washington court. Dkt. 36 at 16–18. This is a logical and unambiguous reading of the two provisions. *Nishikawa v. U.S. Eagle High LLC*, 138 Wn.App. 841, 849 (2007) ("When contract provisions seem to conflict, we will harmonize them with the goal of giving effect to all provisions.") (citing *Realm, Inc. v. City of Olympia*, 168 Wn.App. 1, 5 (2012)). Therefore, the Court rejects Angheloiu's arguments on this issue.

Second, Angheloiu argues that the arbitration provision is procedurally unconscionable. "In Washington, either substantive or procedural unconscionability is sufficient to void a contract . . . ." *Gorden v. Lloyd Ward & Associates, P.C.*, 180 Wn. App. 552, 563 (2014). "Procedural unconscionability has been described as the lack of a meaningful choice, considering all the circumstances surrounding the transaction including [t]he manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms [were] hidden in a maze of fine print." *Nelson v. McGoldrick*, 127 Wn.2d 124, 131 (1995) (internal quotation marks and citations omitted).

In this case, Angheloiu contends that he "did not have a reasonable opportunity to understand the significance of the agreements when read together (as the law requires), given the limitations of his time while he was to consider their substance." Dkt. 28 at 18. This argument is without merit. PeaceHealth gave Angheloiu the agreements in early December 2008 with a predicted start date in early February 2009. Dkt. 36 at 19. Angheloiu chose to sign the documents and return them within one week. He has failed to submit any evidence that PeaceHealth imposed a one week time limit on return of the documents or otherwise coerced Angheloiu into rapidly signing the documents, evidencing a lack of meaningful choice. Therefore, the Court rejects Angheloiu's argument on this issue and compels the parties to arbitration.

//

//

//

## IV. ORDER

Therefore, it is hereby **ORDERED** that PeaceHealth's motion to dismiss and compel arbitration (Dkt. 23) is **GRANTED** and Angheloiu's amended motion for sanctions (Dkt. 28), motion to compel discovery (Dkt. 30), and motion to continue PeaceHealth's motion (Dkt. 31) are **DENIED**.

The Clerk shall enter a **JUDGMENT** that Angheloiu's claims are dismissed for lack of jurisdiction and close the case.

Dated this 31st day of May, 2018.

BENJAMIN H. SETTLE
United States District Judge